## In re NASDAQ MARKET–MAKERS ANTITRUST LITIGATION.

No. 94 Civ. 3996(RWS).
MDL No. 1023.

United States District Court,
S.D. New York.

May 5, 2003.

Fine, Kaplan and Black, Philadelphia, PA, By: Arthur M. Kaplan, Christopher Lovell, Leonard B. Simon, Robert A. Skirnick, of counsel, for Plaintiff Co–Lead.

Kaplan, Fox & Kilsheimer, New York City, By: Richard J. Kilsheimer, of counsel, for AGS Specialist Partners.

## OPINION

SWEET, District Judge.

AGS Specialist Partners ("AGS") seeks by letter, treated as a motion, to be considered as a non-institutional claimant under the Notice and Plan of Distribution entered into as part of the settlement of this class action. The application has been opposed by the Claims Administrator, and it is denied for the reasons set forth below.

### Prior Proceedings

A Notice and Proposed Plan of Distribution were mailed to all claimants on June 11, 1999, and the Plan was approved on January 12, 2000. The Notice stated:

> Each claim will be assigned a weighting factor as follows: If the Claimant is an Institution within the meaning of the NASD Manual—Conduct Rules, Rule 3110(c)(4), the weighting factor shall be 1. Otherwise, the weighting factor shall be 1.5.

AGS filed no objection to the Plan.

AGS submitted claim # 855304770 and affidavits to the Claims Administrator seeking treatment as a non-institution. On March 16, 2001, the Claims Administrator advised the attorney for AGS that because its balance sheet indicated total assets of over $50 million, it would be treated as an institution in connection with the weighting factor resulting in a payment of $3,123,221.79. Correspondence ensued resulting in the submission of a recommendation by class counsel adopting the position of the Claims Administrator which was so ordered by the Court on October 21, 2002.

By letter of November 6, 2002, counsel for AGS sought a ruling from the Court rejecting the position of the Claims Administrator. Further correspondence and affidavits were submitted by counsel for AGS and the class, and the application was heard and marked fully submitted on April 7, 2003.

### AGS

AGS is a partnership that acts as an equity and options specialist on the trading floor on the American Stock Exchange. A major part of its business has been the purchase and sale of securities that were traded in the NASDAQ marketplace. These securities were bought and sold in an effort to offset AGS's risk in options

contracts. When trading in NASDAQ securities, AGS essentially acted like a small broker/dealer. From time to time AGS borrowed assets in excess of $50 million, and the majority of its assets were financed with offsetting liabilities.

### Total Assets Under The Plan

It is the position of AGS that the "Total Assets" under the Plan should in its case be interpreted as net assets and that it should be treated as a non-institutional claimant, the result of which would increase the payment of its claim by some $1.5 million.

The approved Plan of Distribution states; in part, that "If the Claimant is an institution within the meaning of the NASD Manual—Conduct Rules, Rule 3110(c)(4), the weighting factor shall be 1. Otherwise, the weighting factor shall be 1.5."

The Claims Administrator has advised that more than a million claims have been processed under the interpretation of total assets under the NASD Manual—Conduct Rules, Rule 3110(c)(4).

As pointed out by counsel to AGS, prior to 1989, the definition of "institutional investor" in Article III, Section 1 of the NASD Rules of Fair Practice utilized the term "gross assets." This Article was the precursor to Rule 3110, which was promulgated in 1996.

In 1989, Article III, Section 1 was amended and the term "gross assets" was changed to "total assets" in the definition of an "institutional investor." In an August 17, 1989 Securities and Exchange Commission Notice, Release No. 34–27118, 54 FR 33996, the NASD promulgated this proposed rule change. The commentary to the proposed rule change stated that it was necessary to change "gross assets" to "total assets" because there was a need for a "net asset test" to determine if an entity qualified as an "institutional investor":

The original proposed rule change proposed a definition of "institutional investor" that did not have any net asset test with respect to banks, savings and loan associations, insurance companies or registered investment companies. Further, the original proposed rule change would have required that any entity which meets the $100 million gross asset test also demonstrate that the entity regularly makes investments in securities similar to the securities being offered. The commentators suggested that the definition be modified to ... (2) modify the asset test of any entity meeting the definition from "gross assets" to "total assets ..."

*Id.* at 33999.

The NASD Manual—Conduct Rules in effect prior to 1997 contained an analogous regulation involving the qualification requirements for listing companies on NASDAQ. Under Rule 4310, as then in effect, in order for a company to qualify for a listing, it needed to have sufficient assets. That rule utilized the term "total assets," but noted that "total assets" excluded any assets which were "temporary or restricted in their use."

[F]or initial inclusion the issuers shall have total assets of at least $4 million. For continued inclusion, the issuer shall have total assets of at least $2 million. An issuer's total assets will be determined on the basis of a balance sheet prepared in accordance with Generally Accepted Accounting Rules. Assets that are temporary or restricted in their use will be excluded from the determination of total assets.

\*      \*      \*      \*      \*      \*

The NASD determined to accept the recommendation of the commentators to modify the asset test required of any entity meeting the definition from gross assets to total assets and deleted the

requirement that the entity demonstrate that it regularly invests in the type of high yield securities being purchased. 54 FR at 33999.

Subsequently, that rule was further clarified in 1997, and the term "total assets" was replaced with the term "net tangible assets." [1]

AGS's counsel has noted that the precursor to Rule 3110(c)(4) used the term "gross assets." That term is similar in meaning to "total assets."

AGS's argument that the precursor to a different Rule specifically permitted the exclusion of "temporary or restricted" assets does not advance AGS's position. First, this was the precursor to different Rule (Rule 4200(a)(28)), rather than Rule 3110(c)(4). Second, the absence of any such exclusion in Rule 3110(c)(4) is significant. Moreover, Rule 4200(a)(28) was revised to refer to "net tangible assets," unlike Rule 3110(c)(4), which refers to "total assets." It also should be noted that AGS apparently is seeking to deduct liabilities, and not only exclude "temporary or restricted" assets.

As the Court held in approving the Plan of Distribution, "the 1.5/1.0 ratio already accounts for the institutional discount from Instinet and Posit trades." *In re Nasdaq Market–Makers Antitrust Litig.*, 2000 WL 37992, at *4 (S.D.N.Y. Jan.18, 2000). In other words, rather than requiring investors to exclude Instinet trades entirely (which would have reduced AGS's claim by as much as 50%), the Court approved a weighting factor to take into account the inclusion of Instinet trades on which there was little or no damage. The Notice Regarding Proposed Plan of Distribution, Hearing and Proof of Claim explicitly stated that the 1.5/1.0 weighting factors "take into account ... the fact that Claimants are not required to exclude trades made through Instinet and Posit."

Rule 3110(c)(4), as expressly incorporated into the Plan of Distribution, defines Institutions as any:

(1) bank, savings and loan association, insurance company or registered investment company, (2) an investment adviser registered under Section 203 of the Investment Advisors Act of 1940, or (3) any entity with total assets of $50 million or more.

Neither the Plan of Distribution nor Rule 3110(c)(4) of the NASD Manual—Conduct Rules permits a Claimant to substitute any other test to define an institution, such as using "Wall Street's" definition of an institution, or the claimant's own perception about whether it was or was not treated as an "Institution."

Nowhere does Rule 3110(c)(4) imply that "equity" or "capital" or net assets (assets minus liabilities) can be substituted for "total assets." Each such accounting concept is distinct from and different than "total assets."

The term "total assets" is not to be interpreted as "net assets."

The application of AGS is denied.

It is so ordered.

---

1. Currently, Rule 4200(a)(28) provides:
   A. For initial inclusion, the issuer shall have:
      (i) net tangible assets of $4 million; ...
   B. For continued inclusion, the issuer shall maintain:
      (i) net tangible assets of $4 million ...